IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHANNON TERRELL TORRENCE                                                              PLAINTIFF

v.                                     Case No. 4:20-cv-4062

SHERIFF OBIE SIMS; THEARDIS EARLY;
and LAFAYETTE COUNTY, ARKANSAS                                                      DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 24. Plaintiff filed a response. ECF No. 26. Defendants filed a reply. ECF No. 30. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

Plaintiff Shannon Terrell Torrence brings his claims under 42 U.S.C. § 1983, alleging that Defendants, Sheriff Obie Sims and Lieutenant Theardis Early, violated his constitutional rights when they failed to provide him with adequate medical care for his hypertension and type two diabetes during his incarceration at the Lafayette County Detention Center ("LCDC"). Torrence claims that the lack of adequate medical care when he was incarcerated has caused him to become legally blind and suffer from diabetic neuropathy.

Torrence's claims revolve around two separate periods of incarceration at the LCDC. The first of which began on November 22, 2017, the evening before Thanksgiving, when Torrence was booked into the LCDC after his arrest for a DWI. Torrence, who suffered from type two diabetes, had taken his most recent dose of insulin that morning. Some time after being booked into the LCDC, a jail staffer called Torrence's wife and asked her to bring his medications, including insulin, to the jail. Torrence testified in his deposition that, after he was booked into LCDC,

another inmate helped Torrence write out a request to see a doctor.  There is no record of this written request.  On November 23, 2017, Thanksgiving Day, Torrence's blood sugar reading was 241.  Torrence was allowed to call his wife to ask her to bring his medications.  Torrence did not have any additional insulin at his house, and his wife was unable to get a refill.  On November 24, 2017, Torrence's blood sugar reading was 275.  It does not appear that anyone checked Torrence's blood sugar on November 25 or 26.  Torrence testified in his deposition that he felt weak, experienced foot pain, and begged jail staff to get his medication.   On November 27, 2017, the day of his first appearance hearing, Torrence's blood sugar reading was 270.  On November 28, 2017, Torrence's blood sugar reading was 278 at 11:50 p.m.  Shortly thereafter, Torrence was found unresponsive in his cell, and his blood sugar reading was 322.  Torrence was transported to the hospital, where he was given insulin.  He returned to the LCDC approximately four hours later.

     Sheriff Sims and Lieutenant Early, the jail administrator, were not present at the LCDC on the evening of November 22, 2017 through November 27, 2017, because of the Thanksgiving holiday and the weekend.  They both returned to work on Monday, November 27, 2017.  Torrence testified in his deposition that the only time he saw Sheriff Sims was at the first appearance hearing on November 27, 2017, and the only time he saw Lieutenant Early was at the first appearance hearing and upon leaving the facility.  Torrence was released from the LCDC on November 29, 2017.

     The second instance of incarceration at issue in this lawsuit was from October 23, 2019, to October 31, 2019.  On October 24, 2019, Torrence saw the jail doctor and was prescribed medications.  After the doctor visit, Torrance's blood sugar was checked multiple times a day.  Torrence was given his medications as prescribed.  Torrence was given insulin every day during his incarceration dependent on his blood sugar readings.  Sometimes the readings would be high

and sometimes low. The lowest reading Torrence received during this period of incarceration was 59 on October 24, 2019. Torrence testified that he did not talk to Sheriff Sims during this period of incarceration. He further testified that he did not speak to Lieutenant Early but that Lieutenant Early told Torrence that he was sick of Torrence causing problems.

According to Torrence, he had been incarcerated in the LCDC in 2009 for fifty-seven days. He claims that Lieutenant Early made him a trustee during that time. Torrence testified that he always received his insulin and blood pressure medicine during his 2009 incarceration. Lieutenant Early testified in his deposition that he did not "know" Torrence but had met him and knew he had been incarcerated "a couple of times." ECF No. 27-4, p. 7.

It is the policy of the LCDC to provide medical care on an as-needed basis. ECF No. 25-6. The policy directs inmates to fill out and return a medical request form to receive treatment. ECF No. 25-6. Further, the policy states that "[n]ecessary medical treatment will be made available to all inmates/detainees." ECF No. 25-6.

On August 7, 2020, Torrence filed the case at bar, asserting Defendants violated his constitutional rights by failing to provide him with adequate medical care for his hypertension and type two diabetes during his incarceration at the LCDC. Torrence claims that Defendants' failure to provide his with adequate medical care caused him to become legally blind and suffer from and develop diabetic neuropathy. On June 17, 2022, Defendants filed the instant motion, arguing that there is no genuine dispute of material fact and that they are entitled to summary judgment on all claims. Torrence opposes the motion.

## II. STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine

3

dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

### III. DISCUSSION

As an initial matter, the Court must address an issue regarding Torrence's "Statement of Facts." Defendants' statement of undisputed facts contains twenty-eight purported statements of fact. Local Rule 56.1(b) requires the non-moving party to file a separate statement of the material facts as to which he contends a genuine issue exists to be tried. Torrence has not done so. However, he has incorporated a "Statement of Facts" into his brief in support of his response to

4

Defendants' summary judgment motion. ECF No. 27. This "Statement of Facts" contains citations to materials in the record. Thus, the Court will consider Torrence's "Statement of Facts," but all material facts asserted in Defendants' statement of facts are deemed admitted if not controverted by Torrence. *See* Local Rule 56.1(c) and (e).

The Court now turns to the substance of the instant motion. "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). As a pretrial detainee, Torrence is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

"Prison personnel, like corrections officers, without medical training, demonstrate deliberate indifference by 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Rusness v. Becker Co., Minn.*, 31 F.4th 606, 614 (2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). "Proof of deliberate indifference requires that an inmate show the following: '(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it.'" *Id.* (quoting *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019)).

"An objectively serious medical need is one that has been 'diagnosed by a physician as requiring treatment' or one 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 802 (8th Cir. 2022) (quoting *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)). "[T]o demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a 'mental state akin to criminal recklessness: disregarding a known risk to the inmate's

health.'" *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

Because "§ 1983 liability for damages for a constitutional tort is personal, each defendant's conduct must be independently assessed." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). "To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution." *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Defendants argue that they are entitled to summary judgment as to all claims because they were not personally involved in Torrence's medical treatment.

### A. November 22-29, 2017 Incarceration

Neither Sheriff Sims nor Lieutenant Early was working on the Wednesday evening that Torrence was booked into the LCDC. They both returned to work the following Monday, which was the day of Torrence's first appearance hearing. Torrence testified in his deposition that this was the first time he saw Sheriff Sims and Lieutenant Early. Torrence claims that he spoke with both Sheriff Sims and Lieutenant Early at the hearing on Monday about needing his medication, and they assured Torrence that he would receive it. On Monday at 11:50 p.m., Torrence's blood sugar reading was 278, and he passed out approximately 48 minutes later. Torrence was then transported to the hospital where he was given insulin. He returned to the LCDC four hours later.

Torrence argues that Lieutenant Early "knew or should have known" that Torrence needed his blood pressure medicine and his diabetes medicine because Torrence had previously been incarcerated at the LCDC in 2009 and needed medication then. Torrence further argues that Lieutenant Early, as "the supervisor and warden of the jail," should have arranged for Torrence to see the doctor during his November 2017 incarceration. ECF No. 27, pp. 12-13. First, there is no

6

evidence that Early knew before Monday, November 27, 2017, that Torrence was incarcerated. Second, there is no evidence that Lieutenant Early remembered Torrence needed medication or suffered from a serious medical condition when he was incarcerated in 2009. Further, Lieutenant Early was not personally involved in Torrence's medical treatment during his November 2017 incarceration. Lieutenant Early's role at the jail was supervisory, and Torrence fails to point to any individual action of Lieutenant Early that violated the Constitution.

The analysis is similar when it comes to Sheriff Sims. Sheriff Sims first became aware of Torrence's incarceration on Monday, November 27, 2017. Torrence testified that he told Sheriff Sims that day he needed his medication, and Sheriff Sims said he would take care of it. However, Sheriff Sims was not personally involved in Torrence's medical treatment. His role at the jail was supervisory, and Torrence fails to point to any individual action of Sheriff Sims that violated the Constitution.

The Court finds that the facts regarding the November 2017 incarceration do not support a claim against Lieutenant Early or Sheriff Sims under the Fourteenth Amendment. Because the Court finds that there is no constitutional violation, Lieutenant Early and Sheriff Sims are entitled to summary judgment as to the claims related to the November 2017 incarceration.

**B.  October 22-31, 2019 Incarceration**

Torrence claims that while he was incarcerated in 2019, he saw a doctor and was provided insulin. Torrence maintains that the doctor "switched" his insulin and that his blood sugar was not properly regulated. Torrence testified that he did not speak to Sheriff Sims while he was incarcerated in 2019. ECF No. 25-9, p. 81. He further testified that he did not speak to Lieutenant Early but that Lieutenant Early stated he was sick of Torrence causing problems. ECF No. 25-9, p. 81. Sheriff Sims and Lieutenant Early were not personally involved in Torrence's medical

treatment during his October 2019 incarceration. Torrence has failed to present any evidence that Sheriff Sims or Lieutenant Early Torrence disregarded any serious medical need. Torrence saw a doctor and was provided insulin as instructed by the doctor. Early and Sims were not involved in these medical decisions. Torrence fails to point to any individual action of Lieutenant Early or Sheriff Sims that violated the Constitution. Accordingly, Sheriff Sims and Lieutenant Early are entitled to summary judgment as to the claims related to the October 2019 incarceration.

### C. Official Capacity Claims

Because the Court finds that there is no constitutional violation, Torrence's claims against Defendants in their official capacities, which are treated as claims against Lafayette County, must fail. *Morris*, 954 F.3d at 1060.

### IV. CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 24) should be and hereby is **GRANTED**. Torrence's case is hereby **DISMISSED WITH PREJUDICE**. A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 26th day of August, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge